UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BGC PARTNERS, INC., G&E ACQUISITION COMPANY, LLC, and NEWMARK OF MIDWEST REGION LLC, | ) ) ) ) | 15 C 3017 |
| Plaintiffs, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| AVISON YOUNG (CANADA) INC., AVISON YOUNG (USA) INC., AVISON YOUNG-CHICAGO LLC, and MARK ROSE, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

BGC Partners, Inc., G&E Acquisition Company, LLC, and Newmark of Midwest Region LLC (collectively, "BGC") brought this suit in the Circuit Court of Cook County, Illinois, against Avison Young (Canada) Inc., Avison Young (USA) Inc., Avison Young-Chicago LLC, and Mark Rose (collectively, unless context indicates otherwise, "Avison Young"), alleging various state law torts. Doc. 1-1. Avison Young removed the suit under 28 U.S.C. § 1452(a), which applies to cases falling within the bankruptcy jurisdiction, 28 U.S.C. § 1334. Doc. 1. (Avison Young does not invoke the diversity jurisdiction, 28 U.S.C. § 1332(a).) BGC has moved to remand the suit to state court. Doc. 15. The motion is granted.

**Background**

Rose is Chairman and Chief Executive Officer of Avison Young, one of Canada's largest real estate brokerage firms. Doc. 1-1 at ¶¶ 1-2; Doc. 16 at 2. Until 2008, he was President of Grubb & Ellis, a United States-based real estate brokerage. Doc. 1-1 at ¶¶ 1-2; Doc. 16 at 2. BGC alleges that after Rose left Grubb & Ellis to join Avison Young, Avison Young "began an

aggressive expansion campaign in the" United States. Doc. 1-1 at ¶¶ 2, 25; Doc. 16 at 2-3. Like most real estate brokerage firms, Grubb & Ellis operated through contracts with individual brokers, whom it licensed to perform services in locations where the brokerages operated. Doc. 1-1 at ¶ 29. BGC alleges that Avison Young "target[ed] Grubb & Ellis's personnel and offices," "st[ole] commissions, business, and business opportunities from the company," and "induc[ed] dozens of Grubb & Ellis brokers to break their employment or independent contractor agreements." Doc. 16 at 2-3; *see* Doc. 1-1 at ¶¶ 2-5.

Grubb & Ellis soon ran into financial difficulties and on February 20, 2012, filed for bankruptcy protection in the Southern District of New York. Doc. 1-1 at ¶ 20; Doc. 16 at 3; Doc. 21 at 2. On March 27, 2012, BGC purchased substantially all of Grubb & Ellis's assets, effectively becoming its successor-in-interest. Doc. 16 at 3; *see In re Grubb & Ellis Co.*, 2012 WL 1036071 (Bankr. S.D.N.Y. Mar. 27, 2012), *aff'd*, 523 B.R. 423 (S.D.N.Y. 2014). Pursuant to 11 U.S.C. § 363(f), the purchased assets were free and clear of any liens or other interests. Doc. 16 at 3; *In re Grubb & Ellis*, 2012 WL 1036071, at *10. The Grubb & Ellis bankruptcy closed on December 23, 2014. Doc. 16-2. BGC alleges that Avison Young's unlawful targeting of Grubb & Ellis's business, which allegedly began before the bankruptcy proceedings, continued during and after the bankruptcy. Doc. 1-1 at ¶¶ 2, 27; Doc. 16 at 3.

BGC brought this suit in state court on March 3, 2015. Doc. 1-1. The suit is among a handful of similar cases nationwide for which the same pattern repeats: BGC files suit in state court, Avison Young removes to federal court, and BGC moves to remand. Both federal courts to have ruled on the remand motions granted them. *See BGC Partners, Inc. v. Avison Young (Canada) Inc.*, __ F. Supp. 3d __, 2015 WL 4483952 (D.D.C. July 22, 2015); *BGC Partners, Inc. v. Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310 (S.D.N.Y. 2013).

**Discussion**

Section 1334(b) of Title 28 grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see In re FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir. 1996); *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994). Section 1334(b) "creates three distinct bases for original bankruptcy jurisdiction[,] which are commonly referred to as 'arising under,' 'arising in,' and 'related-to' jurisdiction." *In re Aiello*, 231 B.R. 693, 702 (Bankr. N.D. Ill. 1999), *aff'd sub nom. Aiello v. Providian Fin. Corp.*, 257 B.R. 245 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876 (7th Cir. 2001). The "arising in" and "related to" bases of jurisdiction are designed to promote convenience and efficiency in the resolution of a bankruptcy estate. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995); *Zerand-Bernal Grp.*, 23 F.3d at 161; *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). A federal court *may* decline under 28 U.S.C. §§ 1334(c)(1) or 1452(b) to exercise jurisdiction over claims that "arise in" or "relate to" a bankruptcy, and it *must* abstain under 28 U.S.C. § 1334(c)(2) when a suit merely "related to" a bankruptcy proceeding was originally brought in state court if the state court can timely adjudicate the claims. *See In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer federal jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." *Zerand-Bernal Grp.*, 23 F.3d at 162.

Avison Young argues that all three bases of bankruptcy jurisdiction are present here. BGC contests all three grounds, and also argues for permissive and mandatory abstention. As the party opposing remand, Avison Young bears the burden of establishing jurisdiction. *See*

*Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

I. **"Arising Under" Jurisdiction**

"Arising under" jurisdiction is limited to substantive rights, or "core" proceedings, of which the Bankruptcy Code itself is the "source." *In re U.S. Brass Corp.*, 110 F.3d at 1268. "Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *Ibid.*; *see also In re Repository Techs.*, 601 F.3d 710, 719 (7th Cir. 2010) (holding that a claim "arises under" Title 11 when it "depend[s] on a right created or determined by a statutory provision of title 11") (internal quotation marks omitted). "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (internal quotation marks omitted). For example, "a dispute over the meaning or validity of an agreement between the purchaser at a bankruptcy sale and some third party … arises under state rather than federal law." *Zerand-Bernal Grp.*, 23 F.3d at 162. "Otherwise," the Seventh Circuit explained, "anyone who could trace his title to a bankrupt [estate] could invoke federal jurisdiction to settle disputes affecting that property." *Ibid.* (internal quotation marks omitted).

The foregoing makes clear that BGC could not invoke "arising under" jurisdiction, but our situation is the inverse: *Avison Young* is tracing *BGC's* title to the Grubb & Ellis bankruptcy estate in the hope of invoking "arising under" jurisdiction. Avison Young fails to cite, and this court is unaware of, any precedent suggesting that a defendant may use a plaintiff's possession of a debtor's former title to support "arising under" jurisdiction even where the plaintiff could not.

*See Zerand-Bernal Grp.*, 23 F.3d at 162; *In re Kubly*, 818 F.2d 643, 645 (7th Cir. 1987) (holding that "the "limited jurisdiction" of the bankruptcy court "may not be enlarged by the judiciary because the judge believes it wise to resolve the dispute"). That result would make no sense. BGC's claims here are state law tort claims and do not invoke a substantive right conferred by the Bankruptcy Code, which means that they arise under state law, not Title 11.

Avison Young retorts that because BGC alleges that it violated the automatic stay of 11 U.S.C. § 362, BGC's claims necessarily "arise under" Title 11. Doc. 21 at 6-8. "By its very nature, an allegation that the automatic stay was violated must arise under title 11." *In re Gyncor Inc.*, 251 B.R. 344, 351 (N.D. Ill. 2000); *see also Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) (holding that it is "clear that a suit" for violating an automatic stay "could be brought in a district court"). BGC's claims, however, are not predicated on an alleged violation of the bankruptcy stay and raise no claim under 11 U.S.C. § 362(k). BGC is the master of its own complaint, *see Allied-Signal*, 985 F.2d at 911, and the complaint alleges state law tort claims concerning Avison Young conduct that began before the Grubb & Ellis bankruptcy, continued during the bankruptcy, and persisted afterwards. The court need not decide whether BGC *could have* stated claims under § 362(k); it is enough to say that BGC did not. *See Allied-Signal*, 985 F.2d at 911 ("[A] plaintiff may avoid federal court even though certain federal questions may be implicit in his or her claim."). True, BGC's complaint refers to the automatic stay, but simply referring to the stay does not transform BGC's state tort claims into federal bankruptcy claims. *See Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1105 (7th Cir. 1996) ("[M]ere incantation of a federal statute does not confer jurisdiction; rather the dispute must actually involve a substantial question of federal law") (quoting *Franchise Tax Bd.*

*of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 28 (1983)) (internal quotation marks omitted).

Avison Young's alternative argument for "arising under" jurisdiction turns on the fact that, under BGC's asset purchase agreement in the Grubb & Ellis bankruptcy, the bankruptcy estate has a "contingent right … to share in the proceeds of certain actions that [BGC] bring[s] … if the recovery exceeds $20 million." Doc. 16 at 3. BGC's complaint seeks monetary damages "in excess of $1 million," Doc. 1-1 at 24, and this suit is one of several that BGC entities have filed against Avison Young entities. The claims in all those suits could, Avison Young suggests, eventually total more than $20 million and thereby provide additional assets "to pay the claims of Grubb Ellis's creditors." Doc. 21 at 8. Avison Young contends that this case therefore is a "proceeding[] affecting the liquidation of the assets of the estate," which, pursuant to the bankruptcy "catch-all provision" of 28 U.S.C. § 157(b)(2)(O), renders the case a core proceeding "arising under" Title 11. *Ibid*.

This contention fails on two independent grounds. First, it is so bare-bones as to be forfeited. Section 157(b)(2)(O) provides in relevant part: "Core proceedings include … other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." Avison Young's argument regarding § 157(b)(2)(O) reads in its entirety as follows:

> Finally, as Plaintiffs concede, the estate will recover if the damages from their myriad actions against Avison Young exceed $20 million. (Dkt. 16 at 3.) As additional assets would then be available to pay the claims of Grubb & Ellis's creditors, this action may directly affect 'the liquidation of the assets of the estate,' also implicating the 'catch-all' provision of 28 U.S.C. § 157. See 28 U.S.C. § 157(b)(2)(O) (citing "other proceedings affecting the liquidation of the assets of the estate' among other things statutorily defined as 'core proceedings' in bankruptcy). This further confirms that this case arises under bankruptcy law.

*Ibid*. That is an assertion, not a legal argument. Avison Young cites no case law (of which more below) addressing the scope of § 157(b)(2)(O), and it has not even attempted to demonstrate that this case fits within that provision as it has been interpreted by courts. Avison Young has therefore forfeited the point. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[w]e apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue"); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Domka v. Portage Cnty.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008) ("where a party raises a specific argument for the first time on appeal, it is waived even though the 'general issue' was before the district court").

Forfeiture applies even though the forfeited issue concerns subject matter jurisdiction. It is true that "[n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added, internal quotation marks omitted); *see also Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) ("Jurisdictional *objections* cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added, internal quotation marks omitted); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010) ("neither the parties nor their lawyers may waive arguments that the court *lacks* jurisdiction") (emphasis added). However, the *proponent* of subject matter jurisdiction, as with any party with the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Prop.*

*Cas.*, 689 F.3d at 718 ("The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists."); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice"); *In re Littman*, __ B.R. __, 2015 WL 4932637, at *3 (N.D. Ill. Aug. 18, 2015) (same); *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (same). And so here with Avison Young's invocation of § 157(b)(2)(O).

Avison Young's argument fails on the merits in any event. The Supreme Court regularly reinforces the limits placed by Article III on the scope of what can properly be considered a core proceeding "arising under" Title 11. *See Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014); *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). Consistent with those precedents, the Seventh Circuit did not carve an exemption for § 157(b)(2)(O) from its admonition that "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding." *Barnett*, 909 F.2d at 973 (internal quotation marks omitted). This case falls squarely within that admonition. As the Ninth Circuit put it, "bankruptcy courts should read narrowly the § 157(b)(2)(O) 'catch-all provision' to avoid potential constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge." *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004); *see also In re Sheridan*, 362 F.3d 96, 109 (1st Cir. 2004) (collecting cases to the same effect); *In re Best Prods. Co., Inc.*, 68 F.3d 26, 31 (2d Cir. 1995) (cautioning against "an open-ended, limitless construction" of § 157(b)(2)); *In re Wood*, 825 F.2d 90, 95 (5th Cir. 1987) ("We decline … to give such a broad reading to subsection 157(b)(2)(O); otherwise the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings."); *In re ACI-HDT Supply Co.*, 205

B.R. 231, 236 (B.A.P. 9th Cir. 1997) ("[A] proceeding will not be considered a core matter, even if it falls within the literal language of section[] … 157(b)(2)(O), if it is a state law claim that could exist outside of bankruptcy and is not *inextricably bound* to the claims allowance process or a right created by the Bankruptcy Code.") (emphasis original).

The Seventh Circuit has applied § 157(b)(2)(O) only in very limited circumstances that have no application here. *See In re Fillion*, 181 F.3d 859, 862 n.4 (7th Cir. 1999) (pre-petition, unliquidated claims brought against debtors); *In re Xonics*, 813 F.3d at 127 (dispute between two secured creditors over the disbursement of funds in bankruptcy). True, in *Horwitz v. Alloy Automotive Co.*, 992 F.2d 100 (7th Cir. 1993), the Seventh Circuit held that "business torts"—a category to which BGC's claims likely belong—are not *per se* excluded from § 157(b)(2)(O). *Id.* at 103. However, in the same breath, *Horwitz* reaffirmed that "state-law claims that [are] independent of the reorganization"—another category into which BGC's claims fall—are not core proceedings. *Ibid.* It follows that § 157(b)(2)(O) cannot be stretched so far as to justify classifying BGC's state tort claims as core bankruptcy claims subject to "arising under" jurisdiction. *See In re U.S. Brass Corp.*, 110 F.3d at 1269 ("'Core' is a defined term in the Bankruptcy Code, a term of art, rather than a metaphor. The impact of a claim on the size of the debtor's estate is a criterion of whether a claim is related to the bankruptcy and is therefore a noncore proceeding."); *In re United Air Lines, Inc.*, 337 B.R. 904, 910 (N.D. Ill. 2006) ("[A] non-core proceeding cannot be reclassified as a core proceeding simply by declaring that the matter either concerns the administration of the estate or affects the liquidation of the assets.").

## II. "Arising In" Jurisdiction

"Arising in" jurisdiction encompasses only "questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a

debtor." *Zerand-Bernal Grp*., 23 F.3d at 161.  This font of jurisdiction is premised on the notion that in some bankruptcy proceedings, significant "entanglement" exists between a party's state law claims and claims arising under bankruptcy law to justify federal jurisdiction.  *In re Repository Techs*, 601 F.3d at 725.  Such claims include, for example, "administrative matters, orders to turn over property of the estate[,] and determinations of the validity, extent, or priority of liens."  *Id*. at 719 (citing 1 *Collier on Bankruptcy* ¶ 3.01[4][c][iv], at 3-27 (15th ed. rev. 2008)).  "A proceeding arises in bankruptcy only if it has no existence outside of the bankruptcy."  *Ibid*. (internal quotation marks omitted).  As the Seventh Circuit explained, "arising in" jurisdiction "cannot possibly be applicable to [a] dispute between nonparties to the bankruptcy proceeding.  Its domain is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor."  *Zerand-Bernal Grp.*, 23 F.3d at 162.  Neither BGC nor Avison Young were parties to the Grubb & Ellis bankruptcy proceeding, and even if BGC could somehow be considered a party due to its purchase of substantially all of Grubb & Ellis's assets, its claims do not concern the administration of the bankruptcy estate.

Avison Young likens this case to *In re Repository Technologies*, in which the Seventh Circuit found "arising in" jurisdiction where the plaintiff "attempt[ed] to avoid federal jurisdiction by deleting the abuse of the bankruptcy process count from [its] original complaint."  Doc. 21 at 9-10 (quoting *In re Repository Techs.*, 601 F.3d at 720).  Unlike BGC here, the plaintiff in *Repository Technologies* premised its original complaint on federal claims before deleting them in an attempt to keep the case in state court.  601 F.3d at 716.  Moreover, the plaintiff's state law claims there "could not have been the subject of a lawsuit absent the filing of a bankruptcy case."  *Id*. at 720.  Here, by contrast, BGC did not bootstrap state law claims onto

federal claims, as BGC's state law claims—which, as noted, allege conduct both before and after the bankruptcy proceedings—could have been pursued even absent the Grubb & Ellis bankruptcy. The mere fact that a bankruptcy proceeding is present in this suit's factual background does not give rise to "arising in" jurisdiction.

### III. "Related To" Jurisdiction and Mandatory Abstention

"The reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum." *Zerand-Bernal Grp.*, 23 F.3d at 161. The debtor need not be a party in cases "related to" a bankruptcy proceeding. *See In re Teknek, LLC*, 563 F.3d 639, 648 (7th Cir. 2009) ("The jurisdiction of the bankruptcy court … extends beyond claims by and against the debtor, to include suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate, or the allocation of property among creditors.") (internal quotation marks omitted). Still, "[j]urisdiction does not follow … property that is sold; rather that jurisdiction lapses when property leaves the estate." *In re FedPak Sys.,* 80 F.3d at 214 (alteration and internal quotation marks omitted); *see also ibid*. ("A bankruptcy court has jurisdiction over property owned by or in the actual or constructive possession of the debtor.") (internal quotation marks omitted); *In re Chi., Rock I. & Pac. R.R. Co.*, 794 F.2d 1182, 1186-87 (7th Cir. 1986) (same). The Seventh Circuit "ha[s] interpreted 'related to' jurisdiction narrowly out of respect for Article III … as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *In re FedPak Sys.*, 80 F.3d at 214 (internal quotation marks omitted); *see also ibid*. ("[C]ommon sense

cautions against an open-ended interpretation of the "related to" statutory language "in a universe where everything is related to everything else.") (quoting Gerald T. Dunne, "The Bottomless Pit of Bankruptcy Jurisdiction," 112 *Banking L.J.* 957, 957 (1995)).

BGC's purchase of Grubb & Ellis's assets supplies its interest in this case. BGC, however, does not make allegations on behalf of the Grubb & Ellis estate. The bankruptcy court's approval of BGC's purchase of substantially all of Grubb & Ellis's assets means that those assets are BGC's property, not the estate's. *See In re FedPak Sys.*, 80 F.3d at 214; *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992). BGC's state law tort claims are related not to the Grubb & Ellis bankruptcy *per se*, but instead to the assets that BGC purchased in that proceeding—assets now owned by BGC. *Cf. Zerand-Bernal Grp.*, 23 F.3d at 161-62 (holding that a state law action was not a suit against an estate because the bankruptcy was complete and the debtor no longer existed). It follows under the above-cited precedents that BGC's ownership of those assets does not give rise to "related to" jurisdiction.

Recycling one of its arguments for "arising under" jurisdiction, Avison Young contends that the contingent right of former Grubb & Ellis creditors to share in a potential BGC recovery exceeding $20 million implicates the Grubb & Ellis estate because "the amount of property available for distribution or the allocation of property among creditors" can provide grounds for "related to" jurisdiction. *In re Xonics*, 813 F.2d at 131; *see* Doc. 21 at 11. Even if "related to" jurisdiction were present on this ground, Avison Young would have to contend with the abstention requirement of § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing

> such proceeding if an action is commenced, and can be timely adjudicated, in
> a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). "[S]ection 1334(c)(2) makes abstention in favor of the state court mandatory in noncore proceedings not otherwise within federal jurisdiction." *In re U.S. Brass Corp.*, 110 F.3d at 1268. As the Seventh Circuit explained, "the only basis for removal of such cases to a federal court is that they are related to a bankruptcy proceeding; and so neither party has the kind of interest that would ordinarily allow someone to litigate a state law claim in federal court." *Parmalat Capital Fin. Ltd. v. Grant Thornton Int'l*, 756 F.3d 549, 552 (7th Cir. 2014).

As its text suggests, § 1334(c)(2) mandates abstention upon a timely motion if:

> (1) the case is based on a state law claim or cause of action that although related to a case under Title 11, does not arise under Title 11 or arise [in] a case under Title 11; (2) there is no independent basis for federal jurisdiction for the claim other than the bankruptcy proceeding; (3) an action has been commenced in a state forum; and, (4) the case could be timely adjudicated in state court.

*In re L & S Indus., Inc.*, 122 B.R. 987, 996 (Bankr. N.D. Ill. 1991), *aff'd sub nom. Williams v. Stefan*, 133 B.R. 119 (N.D. Ill. 1991), *aff'd sub nom. In re L & S Indus., Inc.*, 989 F.2d 929 (7th Cir. 1993). The first three requirements are satisfied: BGC's state law claims do not "arise under" Title 11 or "arise in" a case under Title 11; given this, and the fact that Avison Young does not invoke the diversity jurisdiction, there is no independent basis for federal jurisdiction absent the bankruptcy proceeding; and BGC commenced this suit in state court. That leaves only the fourth requirement, the possibility of timely adjudication in state court.

The fourth requirement turns on consideration of four factors: "(a) the backlog of the state court's calendar, (b) the status of the bankruptcy proceeding, (c) the complexity of the issues, and (d) whether the state court proceeding would prolong the administration or liquidation of the estate." *Bates & Rogers Constr. Corp. v. Cont'l Bank, N.A.*, 97 B.R. 905, 908

(N.D. Ill. 1989); *see also Parmalat Capital*, 756 F.3d at 554-55 (using the *Bates & Rogers* factors to analyze the possibility of timely adjudication). The second through fourth factors weigh heavily in favor of finding the timely adjudication requirement satisfied. The Grubb & Ellis bankruptcy is complete, and so proceeding in state court could not possibly prolong the estate's administration or liquidation. And this suit brings only state law tort claims, which certainly cannot be too complex for the state court. *See Parmalat Capital*, 756 F.3d at 555 (noting "that the Illinois state court system would provide a more authentic resolution of issues, whether simple or complex, [that] are issues of Illinois law").

The only close question concerns the first factor, the backlog of the state court's calendar. On that question, and in the absence of directly applicable Seventh Circuit precedent, the two sides present conflicting authority. Citing the 2013 Annual Report for the Illinois Courts, Avison Young argues that the Cook County Circuit Court's 36.4-month average for adjudication of a jury case with claims over $50,000 is not timely. Doc. 21 at 13-14; Doc. 22-13 at 62. Avison Young also cites a decision from this District collecting cases holding that the proponent of mandatory abstention bears the burden of presenting affirmative evidence, not mere arguments, supporting the proposition that the state court can timely adjudicate the claims. Doc. 21 at 12-13 (citing *Janazzo, Sr. v. Fleetboston Fin. Corp.*, 2002 WL 54541, at *4 (N.D. Ill. Jan. 15, 2002)). BGC does not dispute that it bears this burden, but it counters with decisions that minimize the importance of crowded dockets, take a holistic view of timeliness that depends in part on whether remanding the case to state court would cause any delay in the bankruptcy proceeding, and find a 35.3-month average to be timely adjudication for purposes of mandatory abstention. Doc. 23 at 11-13 (citing *Official Comm. of Unsecured Creditors of Wickes Inc. v. Wilson*, 2006

WL 1457786, at *5-6 (N.D. Ill. May 23, 2006); *In re DeMert & Dougherty, Inc.*, 271 B.R. 821, 843 (N.D. Ill. 2001)).

BGC has the better of the arguments regarding timeliness. That the state court is busy cannot mean that, for purposes of § 1334(c)(2), its adjudication cannot be timely. Because the Grubb & Ellis bankruptcy is complete, there are no concerns that a remand will delay the bankruptcy proceedings or otherwise slow the distribution of the estate. The weight of the relevant timeliness factors suggests that this case can be timely adjudicated in state court, which in conjunction with the other § 1334(c)(2) requirements mandates abstention.

## Conclusion

For the foregoing reasons, BGC's motion to remand is granted. This case is remanded to the Circuit Court of Cook County, Illinois. Given the grounds underlying this disposition, the court need not address whether permissive abstention is warranted under 28 U.S.C. §§ 1334(c)(1) or 1452(b). Nothing in this opinion speaks or should be interpreted as speaking to the substantive merits of BGC's claims against Avison Young.

November 17, 2015

United States District Judge